[Cite as *Wilburn v. Cartwright*, 2015-Ohio-4233.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|  |  |  |
|---|---|---|
| BERNARD P. WILBURN, Administrator WWA of the Estate of Lloyd H. Cartwright, | : | |
| | : | CASE NO.   CA2015-02-004 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N |
| | | 10/13/2015 |
| - vs - | : | |
| | : | |
| JACK V. CARTWRIGHT, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PC20120209B

Bernard P. Wilburn, 210 S. Court Street, P.O. Box 418, Circleville, Ohio 43113, for plaintiff-appellee

Andrew P. George, 1160 East Main Street, P.O. Box 36, Lebanon, Ohio 45036, for defendants-appellants, Jack V. Cartwright and Loren A. Cartwright

**PIPER, P.J.**

{¶ 1}   Defendants-appellants, Jack and Loren Cartwright, appeal a decision of the Fayette County Court of Common Pleas, Probate Division, awarding certain rents to plaintiff-appellee, Bernard Wilburn, administrator of the estate of Lloyd Cartwright.

{¶ 2}   The parties have previously been before this court in regard to related issues.

*Cartwright v. Allen*, 12th Dist. Fayette No. CA2011-10-025, 2012-Ohio-3631. We reiterate the salient facts of that appeal, which are pertinent to the current appeal.

{¶ 3} In the early 1960s, Jack and Loren Cartwright, along with their brother, Lloyd Cartwright, began a partnership with their father. After their father's death, each brother received a one-third interest in the partnership assets, including a farm located in Union Township, Ohio. Jack and Loren then deeded the farm to Lloyd to allow him to operate his construction business. In exchange, Lloyd gave Jack and Loren a $75,000 judgment lien on the property.

{¶ 4} In 2000, Lloyd created an inter vivos trust, but revoked the trust in writing in 2005 without ever having funded it. Despite never having funded the trust, Lloyd later executed a quitclaim deed purporting to convey title to the farm to Jack and Loren, signed: "Lloyd H. Cartwright, Trustee of the Lloyd H. Cartwright Inter Vivos Trust dated May 12, 2000 * * *." Shortly thereafter, a family attorney recorded the deed in the Fayette County Recorder's Office.

{¶ 5} Lloyd died in 2008, leaving his estate to his two daughters. However, when the daughters discovered that the farm was not listed in the estate inventory, they filed exceptions with the court, arguing that the farm passed to them under the terms of Lloyd's will. The daughters claimed that the deed to Jack and Loren was ineffective because their father did not hold title to the farm as trustee, and that Lloyd was of unsound mind and under undue influence at the time he executed the deed. Jack and Loren subsequently brought an action to quiet title to the farm and to reform the deed. The brothers argued that Lloyd's erroneous designation as grantor-trustee did not trump his clear intention to convey the farm to them.

{¶ 6} After a trial on the matter, the court denied Jack and Loren's complaint, and found that the trustee's deed was void because it attempted to convey property that Lloyd

never held in trust. The trial court also declined to reform the deed and, as a result, quieted title in the estate's favor. This court affirmed the court's decisions.

{¶ 7} Wilburn, the executor of Lloyd's estate, then filed suit to sell the farmland to pay estate debts, and also moved the probate court to order Jack and Loren to pay the estate for rents accrued during the time the brothers occupied the property. Specifically, the complaint alleged that the brothers used buildings on the property in their salvage and recycling business, used other buildings thereon for storage and a repair shop, and also rented approximately 18 acres of the property to farmers.

{¶ 8} After approving the sale of the property to a new buyer, the probate court held a hearing on the rental issue. The court found in favor of Lloyd's estate, ordering Jack and Loren to pay $73,500 for the use of the buildings, as well as $13,050 for the farmland's rental. In total, the court ordered Jack and Loren to pay the estate $86,550 and held the brothers jointly and severally liable for the full amount. Jack and Loren now appeal the probate court's ruling, raising two assignments of error. Because the issues raised within the assignments of error are interrelated, and for ease of discussion, we will address both assignments together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING JUDGMENT IN FAVOR OF PLAINTIFF FOR DAMAGES.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PROPERLY WEIGH/APPLY TETIMONY [sic] AND FACTS ESTABLISHED AT TRIAL WITH REGARD TO THE RENTAL VALUE OF THE SUBJECT PROPERTY.

{¶ 13} Jack and Loren argue in their assignments of error that the probate court's decision is erroneous because the estate did not properly plead unjust enrichment in its

complaint, the rental issue should have been raised as a compulsory counterclaim in the suit to quiet title, they were not unjustly enriched, and that the rental amounts awarded were unsupported by the testimony. Despite these arguments, we find that the probate court did not err in reaching its decision.

**Sufficient Pleading**

{¶ 14} According to Civ.R. 8(A), "A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." The purpose of Civ.R. 8(A) is to give the defendant fair notice of the claim and an opportunity to respond. *Internatl. Brotherhood of Electrical Workers, Loc. Union No. 575 v. Settle-Muter Elec., L.T.D.*, 12th Dist. Fayette No. CA2012-02-003, 2012-Ohio-4524, ¶ 29. To constitute fair notice, the complaint need only allege sufficient underlying facts that relate to and support the alleged claim. *Klan v. Med. Radiologists, Inc.*, 12th Dist. Warren No. CA2014-01-007, 2014-Ohio-2344. Although some claims, such as fraud, have heightened pleading requirements, a claim of unjust enrichment is not subject to any special pleading requirements. *Strahler v. Vessels*, 4th Dist. Washington No. 11CA24, 2012-Ohio-4170, ¶ 9.

{¶ 15} The record indicates that the estate properly pled unjust enrichment in its complaint. In its "Action for Money," the estate clearly alleged that Jack and Loren were in possession of cash payments from the farm rental totaling $18,000 and had failed to pay those rents into the estate. The estate also alleged that the brothers used and occupied the "several structures and outbuildings situated on the said real estate to store supplies, and materials to conduct their business." The estate also alleged that the brothers had not paid for the use of the buildings, and that "there is due the estate * * * a total of $117,000" from the brothers.

{¶ 16} Nowhere in the complaint did the estate allege that the monies due and owing were based on a breach of contract claim. Instead, the complaint included a short and plain statement that the estate was entitled to relief because the brothers had accrued rents that were never paid into the estate, and that the brothers used the buildings for their business without paying the estate for such use. Secondly, the estate demanded a dollar amount specific to the rental income retained by the brothers as well as the rental value of the buildings. As such, the complaint alleged sufficient underlying facts to establish that the estate was pursuing an equitable claim for unjust enrichment, and the pleading was sufficient.

{¶ 17} After reviewing the record, there is no doubt that Jack and Loren were completely aware that the estate was pursuing an equitable claim of unjust enrichment. During the hearing, the brothers defended by alleging that they had not unfairly retained a benefit because they believed they owned the property once Lloyd conveyed the farm via trust before his death. The brothers also argued that the rental values sought were not applicable because of zoning issues, and thus responded to the estate's claim that the brothers had unjustly retained $117,000 in rents. As such, the brothers had fair notice of the unjust enrichment claim and were able to respond and defend against the claim. Accordingly, a theory of unjust enrichment was properly pled.

### Compulsory Counterclaim

{¶ 18} Jack and Loren next argue that the probate court erred in awarding the estate damages because the estate failed to raise payment of rents as a compulsory counterclaim during the quite title action.

{¶ 19} According to Civ.R. 13(A), a pleading must include a counterclaim if the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties

of whom the court cannot acquire jurisdiction." The Ohio Supreme Court set forth a two-part test to determine whether there exists a compulsory counterclaim, which includes an analysis of whether the claim existed at the time of serving the pleading, and whether the claim arose out of the transaction or occurrence that is the subject matter of the opposing claim. *Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St.3d 12, 14 (1984).

{¶ 20} The record indicates that the equitable request for rents was not a compulsory counterclaim to the quiet title action. First, the claim for rents did not exist at the time the brothers initiated the quiet title action. The previous quiet title action was merely a request for the common pleas court to determine who owned the property, and whether Lloyd could have conveyed the property in trust prior to his death. This determination was made specific to the time frame before Lloyd's estate was opened, and established only whether Lloyd was able to transfer the property by trust when no such trust actually existed.

{¶ 21} Secondly, the request for rental payments did not arise out of the same transaction or occurrence as the ownership determination and request to quiet title. The estate had no right to claim rents before it was determined by the common pleas court that the property belonged to the estate because it was never properly conveyed to Jack and Loren. The focus of the quiet title action was whether Lloyd successfully transferred the property to his brothers via trust before his death, and such did not arise from the same transaction or occurrence as the brothers' retention of rents and use of the buildings.

{¶ 22} Having failed on both prongs of the two-part test, the probate court did not err in finding that the rental issue was not a compulsory counterclaim to the quiet title action.

### Unjust Enrichment and Resulting Damages

{¶ 23} Jack and Loren next argue that the probate court erred in determining that they had been unjustly enriched and in ordering them to pay the estate $86,550 for rental income from the farmland and their use of the buildings.

**{¶ 24}** The doctrine of unjust enrichment states that a party should not be allowed to profit or enrich himself inequitably at another's expense, and should be required to make restitution to the party suffering the loss. *Richards v. Newberry*, 12th Dist. Clermont No. CA2014-08-061, 2015-Ohio-1932, ¶ 13. The party asserting a claim of unjust enrichment must demonstrate that he conferred a benefit upon a defendant, the defendant had knowledge of the benefit, and the defendant retained the benefit under circumstances where it would be unjust to do so without payment.[1] *Estate of Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 46.

**{¶ 25}** Regarding the first element of unjust enrichment, the record demonstrates that the estate conferred a benefit upon Jack and Loren. A real estate expert testified that the tillable land was worth $130 per acre in 2009 when the brothers took over the property, and was currently worth $175 per acre. The expert testified that the average value of the rentable farmland was $150 per acre. The expert also testified that there were buildings on the property, and that the approximate rental value was $1,000 per month. According to the expert's testimony, the buildings on the property were in use when he performed his evaluation, including the brothers using it for their garbage and recycling business.

**{¶ 26}** Loren testified that he is in the salvage and recycling business, and also owns an automotive operation where the brothers buy and sell vehicle parts. Loren testified that the brothers used the buildings on the property for various business-related purposes, such as a place to repair their dumpsters or work on automobiles and trash compactors. Jack also testified that he and his brother used the buildings for storage, including a place to store automobiles, trucks, wood, and other products.

---

1. The brothers also raise a Statute of Frauds defense, and argue that to claim rents, a party must prove the existence of a valid written contract. However, and even if the estate was not entitled to pursue a breach of contract claim because such was barred by the Statute of Frauds, the estate could still recover under an unjust enrichment claim. *Hosterman v. French*, 7th Dist. Columbiana No. 13 CO 25, 2014-Ohio-5855, ¶ 21.

{¶ 27} Loren admitted during his testimony that the brothers never paid the estate rent for the use of the buildings even though they continued to use the buildings for business purposes until approximately one month before the hearing occurred. Loren also testified that he and Jack made only a payment or two to the estate for the rents collected from the farmers.

{¶ 28} Lloyd's daughter testified that she was familiar with the property, as it was located across the road from where her father lived and she could see it from her father's home. The daughter testified that when she would visit her ailing father or care for his property, she saw the brothers conducting business in and around the buildings. According to her testimony, the brothers stored and worked on cars in one of the buildings, and also had cherry pickers, burnt timbers, metal trusses, dumpsters, roll-offs, and compacted cardboard in the other building. She also testified that a farmer had always worked the land, and that such farmers rented the tillable portion of the property from the brothers once her father passed away.

{¶ 29} The current owner of the property, who purchased it from the estate, also testified that the brothers had been using the buildings for business purposes in the time period before he purchased the property. The current owner testified that when he first inspected the property, the buildings were being used as a mechanic or repair shop, and that the other building had stored automobile parts. The current owner also confirmed that the tillable portion of the land was being used by a farmer who rented the property from Jack and Loren.

{¶ 30} This testimony and evidence demonstrates that the brothers were conferred a benefit in that they used the buildings on the property for their business purposes, and also earned rental income from the tillable portion of the property. The record demonstrates that the land and buildings belonged to the estate, so that any rental income retained, or use of

the buildings, conferred a benefit upon the brothers.

**{¶ 31}** Regarding the second element of unjust enrichment, the record also demonstrates that Jack and Loren had knowledge of the benefit conferred upon them. At no time did the brothers contend that they did not use the buildings for their business, or retain the rental income. Instead, the brothers argue that they did not know that they were unjustly retaining a benefit because they believed that they were the owners of the property. However, and as the probate court noted in its opinion, the brothers were fully-aware that they were not the owners of the property in 2012 when this court affirmed the common pleas court's decision to quiet title in favor of the estate. Even before 2012, and as far back as 2007, the brothers performed transactions regarding the property with Lloyd in which Lloyd clearly acted as an individual, rather than a trustee. Based on those transactions and dealings, this court determined that Jack and Loren's mistaken belief that they owned the property once it was transferred via trust was "disingenuous."[2] *Cartwright v. Allen*, 12th Dist. Fayette No. CA2011-10-025, 2012-Ohio-3631, ¶ 32. As such, and knowing that they were not the true owners of the property where it was never transferred to them via a valid trust, the brothers had knowledge of the benefit conferred upon them.

**{¶ 32}** Regarding the third element of unjust enrichment, the record demonstrates that Jack and Loren retained the benefit under circumstances where it would be unjust to do so without payment. The record is clear that the brothers used the buildings for their own business purposes, and also accepted rents from the farmers who rented the tillable portion of the property. Jack and Loren did not pay any rents for the use of the buildings, and only paid $1,350 of the collected rents to the estate. As such, Jack and Loren retained the benefit

---

2. The brothers also raise an estoppel defense and argue that they cannot be held accountable for the use of the buildings because Lloyd never charged them for any use before he died. However, once Lloyd passed, his estate was the owner of the property and buildings, and thus, could request payment for use of the buildings. As such, the brothers could no longer rely upon Lloyd's permission to use the buildings for free.

of their use of the buildings and their retention of the rental income, and justice requires that they pay for such retention and use.

{¶ 33} Having found that the estate demonstrated that it conferred a benefit upon Jack and Loren, the brothers had knowledge of the benefit, and they retained the benefit under circumstances where it would be unjust to do so without payment, unjust enrichment was a proper legal theory under which the estate could recover.

{¶ 34} We also note that the probate court's award of damages was supported by the evidence deduced at the hearing. The testimony provided by the various witnesses established the fair rental value of the buildings and of the farmland. As previously indicated, the real estate expert testified that the fair rental value of the property was approximately $150 per acre. The evidence indicated that Jack and Loren collected $2,400 per year for the tillable portion of the property, and did so for six years. The brothers only deposited $1,350 into the estate, and kept the rest of the rental income.

{¶ 35} The probate court also heard evidence from the real estate expert that the buildings could rent for $1,000 per month. Jack and Loren essentially argue that the probate court erred in awarding damages because the buildings were worthless for rental purposes where the land had been zoned for agricultural use rather than commercial use. However, the record is clear that the brothers used the buildings during their tenure on the property, and the land's current zoning did not change that fact. Despite any designation of the property as agricultural or commercial, the brothers enjoyed the use of the buildings to aid in their business pursuits, and the fair rental value of the buildings was $1,000 a month.

{¶ 36} Jack also admitted during his testimony that he and Loren had been "grandfathered-in" regarding their ability to use the land for nonagricultural uses once the zoning designation had been changed. At no time did either brother testify that they could not use the buildings for their desired purpose, or that any zoning issue changed the way in

which they utilized the buildings for their business purposes. The current owner also testified that despite any zoning ordinance, he would be renting one of the buildings for $1,500, and that he would rent the other building for $500-$1,000 per month depending on what repairs he was willing to do.[3]

{¶ 37} The testimony and evidence deduced at the hearing supports the probate court's ruling that Jack and Loren retained rental income of $13,050 during the time they occupied the property. Additionally, the testimony and evidence demonstrated that the brothers used the buildings on the property, at a benefit of approximately $1,000 per month, for 73.5 months during their occupancy of the property. As such, the probate court's order for Jack and Loren to pay damages of $73,500 to the estate for renting the buildings was supported by the record.

{¶ 38} Having found that each of the brothers' arguments lack merit in regard to the probate court's ruling, and that the probate court's total award of $86,550 was supported by the record, Jack and Loren's first and second assignments of error are overruled.

{¶ 39} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

---

3. The current owner also testified that he was in the process of receiving a use variance, and that he had received no opposition from the city or neighbors regarding his proposed commercial use of the buildings.